IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

OPINION AND ORDER

v.

14-cr-90-wmc

AARON THOMPSON

---

The defendant, Aaron Thompson, has been charged with distribution and possession with intent to distribute a mixture or substance containing crack cocaine. The indictment stems from a controlled purchase by a confidential informant who was equipped by law enforcement with recording devices and an audio transmitter to document the transaction. Thompson has filed a motion to suppress the audiovisual recording of Thompson selling crack cocaine to the confidential informant.   Magistrate Judge Stephen Crocker has issued a report, recommending that the court deny Thompson's motion to suppress.   In doing so, Judge Crocker found that Thompson had no constitutionally protected expectation of privacy in what the informant saw, heard and covertly recorded after he was invited onto the premises.

Thompson does not object to Judge Crocker's factual findings concerning the transaction that forms the basis for the charges against him.   Thompson does, however, raise specific objections to Judge Crocker's ultimate legal conclusion that the confidential informant's surreptitious recording does not offend the Fourth Amendment.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the court reviews a magistrate judge's report and recommendation *de novo* as to the legal conclusion to which objection is made.   For the reasons outlined below, the court will adopt the recommendation and deny Thompson's motion to suppress.

1

FACTS

The underlying facts set forth at length in Judge Crocker's report are undisputed and will not be repeated here.   What follows is a short summary of those facts most relevant to Thompson's motion.

On March 4 and 5, 2014, Thompson was staying at an apartment located at 432 Rose Street, Apt. 4, in La Crosse.   The apartment belonged to Ernest Knox.   At that time, the West Central Metropolitan Enforcement Group (the "task force") was investigating the Knox family and had used a confidential informant ("CI 292") to buy crack cocaine from Knox family members on a number of occasions.   On March 5, CI 292 called a telephone number associated with Ernest Knox to see if he could buy some crack cocaine.   After indicating that he had $400, CI 292 was invited over to the apartment.

Before CI 292 traveled to Ernest Knox's apartment, the task force provided him with $400 in prerecorded bills and equipped him with a mobile digital audio/video recorder, a body digital audio/video recorder (also known as a "button-cam") and a remote audio transmitter so they could monitor the transaction in real time.   With task force agents listening in, CI 292 entered Knox's apartment and returned to the agents five minutes later, handing over twelve rocks of crack cocaine (about 3.8 grams total).   The agents retrieved the recordings made by CI 292, which showed Thompson selling him the crack cocaine.

Thompson conceded that CI 292 was invited into the apartment, but nevertheless argued that CI 292's surreptitious use of a video camera inside a private residence constituted an unreasonable search without a warrant.   In particular, Thompson argued that CI 292's

2

video should be suppressed because:  (1) the "extraordinary intrusiveness of covert video surveillance into the highest privacy expectations enjoyed within the home [] outweigh the applicable law enforcement interests" under *Katz v. United States*, 389 U.S. 347 (1967); (2) CI 292's entry into the home by deception to record what happened constituted an unlicensed governmental intrusion or "trespass" under *United States v. Jones*, — U.S. —, 132 S. Ct. 945 (2012), and *Florida Jardines*, — U.S. —, 133 S. Ct. 1409 (2013); (3) the nature and extent of covert recordings here exceed those approved over a Fourth Amendment challenge by a plurality of the Supreme Court in *United States v. White*, 401 U.S. 745 (1971); and (4) a warrant should be required when the government enters a home by deception to obtain recordings of its interior.  (Deft. Brief in Support of Mt. to Suppress (dkt. #24), pp. 2-8.)

Judge Crocker rejected all of Thompson's legal arguments and recommended that the motion to suppress be denied, concluding as follows:

> Where a confidential informant who enters a private residence is secretly equipped with devices that record no more than what the informant also can see and hear, there is no trespass and no violation of any reasonable expectation of privacy.  All courts that have considered this question have so ruled, and the Supreme Court cases cited and analogized by Thompson are distinguishable.

*Report and Recommendation*, dkt. # 28, at 1-2.  Thompson objects to this conclusion and the magistrate judge's report on the following grounds:  (1) the report erred by not treating the surreptitious video recording as a trespass; (2) the report erred by distinguishing the trespass cases relied on by Thompson; (3) the report erred by applying the third party doctrine instead of the *Katz* balancing test; and (4) in doing so, the report "overextend[ed] the third party doctrine."  (Objections (dkt. #29), p. 2.)

OPINION

The Fourth Amendment protects "t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *United States v. Jackson*, 598 F.3d 390, 346 (7th Cir. 2011) (quoting U.S. Const. amend. IV). "A 'search' within the meaning of the Fourth Amendment occurs only where an individual has a reasonable expectation of privacy in the area searched." *United States v. Kelly*, 772 F.3d 1072, 1083-84 (7th Cir. 2014) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).  "Whether an expectation of privacy exists for Fourth Amendment purposes depends upon two questions: (1) whether the individual, by his conduct, has exhibited an actual expectation of privacy; and (2) whether the individual's expectation of privacy is one that society is prepared to recognize as reasonable." *United States v. Yang*, 478 F.3d 832, 835 (7th Cir. 2007).

Thompson maintains that CI 292's use of a concealed button-cam constituted an unreasonable search because it allowed the government to "trespass" or physically intrude on a constitutionally protected area.   In support of that argument, Thompson relies primarily on *United States v. Jones*, — U.S. —, 132 S. Ct. 945, 949 (2012), which held that physical attachment of a GPS tracking device to a vehicle was a search within meaning of the Fourth Amendment. Thompson also relies on *Florida v. Jardines*, — U.S. —, 133 S. Ct. 1409 (2013), which held a trespass or "unlicensed physical intrusion" by a drug-sniffing dog on the front porch of a home constituted a search for Fourth Amendment purposes.

The magistrate judge's report found that there was no trespass because unlike the law enforcement officials in *Jones* and *Jardines*, the information recorded here was only obtained

4

after CI 292 had been invited into Ernest Knox's apartment to purchase crack cocaine.   Once the CI was invited into the apartment, Thompson forfeited any privacy interest in the activities that were exposed to the CI and conveyed to the government.   *See Lewis v. United States*, 385 U.S. 206 (1966); *see also Hoffa v. United States*, 385 U.S. 293, 302 (1966) (The Fourth Amendment does not protect "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.").   In that respect, "the Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 350 (1967). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Id*. (citations omitted).   Only if the government made recordings of conversations or events inside Knox's apartment on devices that CI 292 had surreptitiously placed outside his presence or left behind could Thompson have plausibly claimed a reasonable expectation of privacy analogous to *Jones* or *Jardines*.

In contrast to the cases relied upon by Thompson, the Supreme Court has held that there is no search within the meaning of the Fourth Amendment under circumstances in which the government "sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, . . . or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence." *United States v. White*, 401 U.S 745, 748 (1971) (internal citation omitted).   While the Supreme Court's holding in *White* concerned an audio recording, Thompson provides no persuasive reason to distinguish between audio and video surveillance of the sort employed here, except that the latter constitutes a "higher intrusion into privacy expectations."   (Objections, p. 4.)   But this

misses the point of *White*.  It is not the impact of the medium, but the consent that the invited guest hear *or* see events within the home that voids any claimed expectation of privacy.

Here, Judge Crocker was careful to find that the video recording made by CI 292 "did not capture or reveal any sights or sounds beyond what CI 292 personally saw, heard and reported" to law enforcement regarding the drug transaction.  As Judge Crocker observed, all other courts to have considered similar circumstances have uniformly held that "a CI's use of video recording equipment is no less constitutional than the use of audio recording equipment when the CI has been admitted with the consent of the suspect and remains in the presence of the suspect for the duration of the recording."  *United States v. Nash*, 2013 WL 5503796, at *3 (S.D. Ind. 2013) (citing and quoting *United States v. Davis*, 326 F.3d 361, 366 (2d Cir. 2003) (holding that a video recording by a CI is no less allowable than an audio recording); *United States v. Lee*, 359 F.3d 194, 200 (3d Cir. 2004) ("[I]f a person consents to the presence at a meeting of another person who is willing to reveal what occurred, the Fourth Amendment permits the government to obtain and use the best available proof of what the latter person could have testified about."); *United States v. Brathwaite*, 458 F.3d 376, 380 (5th Cir. 2006) ("[W]e are unable to find a constitutionally relevant difference between audio and video surveillance."); *United States v. Wahchumwah*, 710 F.3d 862, 868 (9th Cir. 2013) ("We hold that an undercover agent's warrantless use of a concealed audio-video device in a home into which he has been invited by a suspect does not violate the Fourth Amendment.")); *see also* HON. JAMES G. CARR AND PATRICIA L. BELLIA, 1 LAW OF ELECTRONIC SURVEILLANCE § 3.76 ("Where a person equipped with a video-audio recording device enters a home with consent, the ensuing recording does not violate the Fourth Amendment.").

6

Likewise, Judge Crocker properly concluded that Thompson had no recognized privacy interest in activities that he chose to disclose voluntarily to CI 292 as an invited visitor to the apartment.   Because Thompson did not retain a privacy interest in the activities disclosed to CI 292, no Fourth Amendment violation occurred.   Accordingly,

ORDER

IT IS ORDERED that the report and recommendation (dkt. # 28) is ADOPTED and defendant Aaron Thompson's motion to suppress (dkt. # 13) is DENIED.

Entered this 17th day of February, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

7